R. L. WILLIAMS, |
MATTHEW J. KANE, } Justices.
JESSE J. DUNN, |

### KINGKADE v. CONTINENTAL CASUALTY CO.

No. 1258.   Opinion Filed December 3, 1912.

(128 Pac. 683.)

**INSURANCE** — Health Insurance—Construction of Policy.   A health insurance contract provided for the payment of indemnity in event the assured under certain specified conditions suffered from any of the diseases enumerated therein.   The contract was so conditioned that it did not cover disability occasioned by or resulting from any chronic disease or diseases other than in acute and fully developed form.   **Held**, that the assured, being afflicted with chronic nephritis, was not entitled to recover thereunder.

(Syllabus by the Court.)

Williams and Kane, JJ., dissenting.

*Error from District Court, Cleveland County;*
*R. McMillan, Judge.*

Action by Andrew Kingkade against the Continental Casualty Company.   Judgment for defendant, and plaintiff brings error.   Affirmed.

*Newell & Jackson,* for plaintiff in error.

*Manton Maverick, Edwin H. Manning,* and *Charles H. Woods,* for defendant in error.

DUNN, J. This case presents error from the district court of Cleveland county. The sole question involved is whether, under a health rider to an accident policy, the plaintiff in error can recover on the contract for and on account of being afflicted with chronic nephritis. The lower court rendered judgment against him, and he has brought the case to this court for review.

The specific provisions of the policy necessary for us to notice are as follows:

"In consideration of the warranties and agreements contained in the application for the policy to which this rider is attached, and in further consideration of the payment of premium as provided in such application, hereby promises to pay to the insured, subject to the conditions hereinafter specified, a weekly sickness indemnity of twenty-five dollars, as follows:

"(A) In the event that the insured, while the policy is in force, and after it has been in full force and effect without delinquency in the payment of premium for not less than fifteen days, shall be ill from typhoid fever, typhus fever, scarlet fever, yellow fever, tetanus, mumps, varicella, smallpox, varioloid, diptheria, enteritis, cholera morbus, colitis, typhlitis, pneumonia, pleurisy, peritonitis, epilepsy, locomotor ataxia, nephritis, scarlatina, erysipelas, appendicitis, apoplexy, diabetes, lipoma, sarcoma, asteoma, epithelioma, boils, renal calculi (gravel), cancer, measles, asiatic cholera, acute meningitis or cerebro-spinal meningitis, and thereby be wholly and continuously disabled and prevented from engaging in any labor or occupation, the company will pay said weekly indemnity for such period of time, not exceeding twenty-six weeks, as the insured, by reason of such illness and independently of all other causes, shall be confined strictly within the house, and there be regularly visited by a legally qualified physician. * * * This rider is attached to policy No. 763480 and forms a part thereof, and is subject to the conditions of said policy. This rider does not cover any disability occasioned by or resulting from any surgical operation unless the same is made necessary by any one of the above-named diseases, and takes place within ninety days from the beginning thereof; nor does this rider cover disability occasioned by or resulting from any

chronic disease, or any disease in other than acute and fully developed form.   *   *   *   *   "

It is the contention of plaintiff in error that by reason that the disease of meningitis which is named in the policy is denominated "acute meningitis," and that the word "acute" is not used with reference to the word nephritis, therefore it was the intention of the company to insure him against nephritis in any of its forms, either acute, chronic, or otherwise, or, if this intention was not clearly manifested by the contract, that there was such an ambiguity therein that under the operation of the uniform doctrine of where a policy is reasonably susceptible of two constructions, the one is to be adopted which is most favorable to the assured, and also that as the policy should be construed as the promisee understood it, he ought to prevail.   The rule thus stated and the claim made is without doubt sound, and is to be applied in all cases where the insurance contract is ambiguous or uncertain, but in our judgment it is not applicable in the present case.   The correct rule for the construction of a written instrument is laid down by the Supreme Court of the United States in the case of *Board of County Commissioners of County of Lake v. Rollins,* 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060, wherein Justice Lamar, who prepared the opinion in that case, said:

"To get at the thought or meaning expressed in a statute, a contract, or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them.   If the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it"—citing authorities.

Our statute, announcing the common law on this subject, likewise lays down certain rules for the construction of contracts, and section 1097, Comp. Laws 1909, requires their application for the purpose of ascertaining the intention of the parties to a contract.   Section 1098, *Id.,* reads:

"The language of a contract is to givern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

Section 1101, *Id.,* provides:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Looking, therefore, to the language of the contract before us, we find that the payment promised by the company to the insured in the event he was ill from any of the diseases named was in the first paragraph made "subject to the conditions hereinafter specified." One of the specified conditions was that it did not cover any disability occasioned by or resulting from any chronic disease or any disease in other than acute or fully developed form. Now, if the whole of the contract is to be taken together and effect given to every part thereof, as required by the common law, as well as by our statute, it seems clear that one suffering from any one of the diseases mentioned that was chronic was not within the intention of the parties to this contract. In order to allow plaintiff to recover, it would be necessary to run the judicial pen through this plain, unambiguous, controlling, and limiting provision agreed upon by the parties, and make an entirely different contract for them than the one into which they entered. If chronic nephritis could be recovered for, then every other of the diseases mentioned, although chronic, with the exception of acute meningitis, might likewise, if such a form could be developed, be recovered for.

In a lengthy pact of this character every condition cannot be inserted in the first line, nor perhaps in the first paragraph; but it would require something more than putting a controlling provision of the character here involved in a later paragraph to authorize us to eliminate it and hold that a health insurance company was engaged in the business of indemnifying people afflicted . with chronic diseases against being sick.

It is said in the case of *Merrill v. Travelers' Insurance Company,* 91 Wis. 329, 64 N. W. 1039, that:

"Policies of insurance are framed probably with greater care and stricter attention to the language employed than almost any other kind of contracts, and each sentence, phrase, and word has an appropriate office and definite meaning. The rule of construction is that some particular operation, effect, and meaning must be assigned to each sentence, phrase, and word used, and when

this may fairly and properly be done, no part of the language used can be rejected as superfluous or unmeaning."

Referring to this rule, in the syllabus it is said:

"The rule that, where reasonably intelligent men would honestly differ as to the meaning of the policy, the doubt should be resolved against the insurer, cannot apply where the doubt is raised by disregarding the foregoing rule of construction."

Other authorities supporting this same proposition may be noted as follows: *General Accident Ins. Co. v. Hayes,* 52 Tex. Civ. App. 272, 113 S. W. 990; *Standard Life & Accident Ins. Co. v. McNulty,* 157 Fed. 224, 85 C. C. A. 22; *Duran v. Standard Life & Accident Ins. Co.,* 63 Vt. 437, 22 Atl. 530, 13 L. R. A. 637, 25 Am. St. Rep. 773; *Johnson v. Dominion of Canada Guaranty & Accident Ins. Co.,* 12 Ont. Weekly Rep. 980.

Giving effect, therefore, to all of the provisions of the policy, requires us to hold that one with such a contract and suffering from chronic nephritis could not recover, and this holding on our part requires the affirmance of the judgment of the trial court.

TURNER, C. J., and HAYES, J., concur; WILLIAMS and KANE, JJ., dissent.